

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

Samantha E. Stone, Pro Se Plaintiff
253 Main Street, Suite 144
Matawan, NJ 07747

v.

Cardigan Mountain School, Inc.; et al
Defendants

Civil Action No. _____

.

## TABLE OF CONTENTS

This Table of Contents can be auto-generated in Word after opening this document.

I. Jurisdiction and Venue ...................................................1

II. Parties ............................................................................2

III. Statement of Facts ........................................................3

IV. Human Impact Statement ............................................7

V. Causes of Action ............................................................9

VI. Prayer for Relief ..........................................................12

VII. Verification ................................................................15

VIII. Exhibits Index ..........................................................16



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**SAMANTHA STONE,** individually and as Guardian for **J.S.** and **I.S., minors,**
Plaintiff,
v.

# CARDIGAN MOUNTAIN SCHOOL, INC.; CHRISTOPHER DAY; RYAN FROST; KEVIN COLLINS; CHRISTOPHER KELLEHER; JOE DOHERTY; KRISTOFOR LANGETIEG; [JOHN/JANE DOES 1–10],

Defendants

Civil Action No.: _____

**COMPLAINT** — Jury Trial Demanded

## COMPLAINT

Plaintiff, proceeding pro se, brings this civil action against Cardigan Mountain School and its staff for racial discrimination, retaliation, assault, negligence, defamation, and deliberate indifference to the safety and welfare of her minor sons, referred to as J.S. and I.S.

## PRELIMINARY STATEMENT

- This is an action for redress, accountability, and systemic reform arising from sustained assault, racial discrimination, retaliation, negligent supervision, and deliberate concealment of abuse and injuries affecting two minor boarding

students — J.S. and I.S. — at Cardigan Mountain School, an institution entrusted with 24/7 care of minors.

- This matter is brought in the public interest to expose systemic neglect and racial disparities within private educational institutions entrusted with minors. Plaintiff seeks injunctive relief to ensure no other family endures similar harm and to promote transparency and accountability across the boarding school industry.

- Plaintiff seeks compensatory and punitive damages, injunctive relief (including policy reform and records expungement), disclosure of insurance, appointment of a neutral monitor to confirm reforms, and all other relief permitted under federal and state law, including a jury trial.

- Plaintiff demands judgment against all Defendants in the total amount of **TWENTY FIVE MILLION DOLLARS ($25,000,000.00),** together with punitive damages, interest, costs, and attorneys' fees as allowed by law.

## I. JURISDICTION AND VENUE

- This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 for claims arising under the Constitution and federal civil rights statutes, including 42 U.S.C. §§ 1981, 1985, and, where applicable, § 1983.

- Even if Cardigan Mountain School does not receive federal funding, this action arises under federal law because Defendants acted jointly with local law enforcement and state-mandated reporting systems, thereby functioning under color of state law.

- Alternatively, jurisdiction exists under 42 U.S.C. §§ 1981 and 1985, which prohibit race-based interference with contract and equal protection rights **regardless of federal funding.**

- This Court also exercises supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367.

- Should any federal count be dismissed for lack of subject matter jurisdiction, Plaintiff respectfully requests that this Court retain supplemental jurisdiction under 28 U.S.C. § 1367 over all remaining state-law claims. Alternatively, Plaintiff requests remand of those claims to the Superior Court of Grafton County, New Hampshire, to ensure full adjudication of all rights under state law.

- Venue is proper under 28 U.S.C. § 1391 because the acts and omissions giving rise to these claims occurred in Grafton County, New Hampshire, within this judicial district, and Defendants reside or are located in this District.

- Jurisdictional Clarification:
  Although Defendant Cardigan Mountain School is a private institution, its conduct falls within the reach of federal jurisdiction under both federal question and diversity principles. Cardigan's administration acted under color of law by coordinating with public entities, including state education authorities and local law enforcement, thereby engaging in joint action sufficient to invoke 42 U.S.C. § 1983. Independently, this Court retains diversity jurisdiction under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000. This

clarification is offered to preempt jurisdictional challenges and to ensure full adjudication of the federal and state claims properly before this Court.

## II. PARTIES

- Plaintiff **Samantha E. Stone**, is a resident of New Jersey and mother of J.S. and I.S.

- Defendant **Cardigan Mountain School** is a private boarding school located in Canaan, New Hampshire.

- Defendant **Christopher Day**, Headmaster, is responsible for overall school operations and supervision.

- Defendant Ryan Frost, Athletic Director (and then-President of NEPSAC, acting under color of institutional authority) assaulted and humiliated J.S. publicly.

- Defendant **Kevin Collins**, Director of PEAKS and teacher, assaulted I.S.

- Defendant **Christopher Kelleher**, staff, participated in covering up the Collins assault.

- Defendant **Kristofor Langetieg**, academic and athletic advisor, retaliated against J.S. and caused additional injury to I.S.

- Defendant **Joe Doherty**, Dean of Discipline, defamed J.S. and denied him leadership roles.

## III. STATEMENT OF FACTS

### 1. Assault on I.S. by Kevin Collins

**February 7, 2025 – Assault on Isaiah Stone by Staff (Kevin Collins)**

Staff member **Mr. Kevin Collins** physically assaulted minor **I.S. (I S)** on school property. The assault was witnessed by at least one student, though fear prevented that student from speaking to police. The school failed to notify the parents immediately, violating New Hampshire child protection reporting duties under **NH RSA 169-C:29 (Mandatory Reporting of Child Abuse or Neglect)**.

### 2. Injury and Retaliation Against I.S.

On February 26, 2025, I.S. suffered a leg injury sprained playing basketball. Langetieg forced him to perform cafeteria cleaning duties despite visible crutches and a medical boot, aggravating the injury. New Jersey orthopedics later confirmed a fracture. The school ignored medical evidence and Plaintiff's reports.

After the complaint regarding Mr. Collins, Defendant **Kristofor Langetieg**, serving as Secondary Advisor to I.S., during a visit to prospective schools, engaged in conduct that appeared calculated to intimidate and silence him. Langetieg took the sixteen-year-old minor to a pub for what appeared to be lunch where several adult patrons were openly carrying firearms. The setting was unsafe, wholly inappropriate for a minor, and created a climate of fear.

When I.S. expressed discomfort and asked whether such an environment was normal, Langetieg responded, "My white privilege would not allow me to notice these things." This statement

reflected not only racial insensitivity but also a disturbing disregard for the emotional and physical safety of a Black student under his supervision.

In context and timing—occurring soon after I.S. reported the Collins assault—this outing appeared to be a coordinated effort to remind him of his vulnerability and to discourage him from pursuing the truth. It served as a chilling message to a young Black student that continuing to speak out could have dangerous consequences.

Langetieg further misused his position of authority to interfere with I.S.'s educational advancement. Although acknowledging that I.S.'s grades were acceptable, he stated that "if I put you out there, it will reflect back on me," and later placed a negative call to Blair Academy (NJ) that resulted in I.S. losing a confirmed placement opportunity. The Blair football coach later corroborated that Langetieg's comments were the reason the offer was withdrawn. This conduct constitutes **retaliation, racial discrimination, and abuse of authority**, causing loss of opportunity and emotional distress.

After Plaintiff Samantha Stone reported the assault on her son I.S. by faculty member Kevin Collins, Cardigan Mountain School engaged in a pattern of retaliation against both I.S. and J.S. to silence and discredit the family's complaint.

Faculty and administrators ignored I.S.'s medical needs, failed to perform basic care, and subjected him to humiliating treatment:

**Neglect of basic needs:** Isaiah's laundry was left mildewed and unwashed, demonstrating a clear disregard for his wellbeing.

**Isolation and humiliation:** At graduation, Isaiah was made to appear visibly unkempt; while all other students wore gray pants and clean shirts, he was photographed in black pants and a visibly dirty white shirt — a public marker of ostracism.

**Psychological distress:** Isaiah displayed a level of withdrawal and depression not previously seen developing eating disorder and gaining a total of 56 lb. by graduation. Staff confirmed he was being given the "cold shoulder" and was pressured to retract his truthful statement about the Collins assault.

### 3. Retaliation Against J.S.

Following the mother's continued advocacy on behalf of I.S., the school's faculty began targeting his younger brother, J.S., with escalating harassment and humiliation. On or about April 25, 2025, staff member **Ryan Frost (athletic director & president of NEPSAC)** physically assaulted J.S., grabbing him and shouting that he was "a disgrace to the school" in front of students and other parents. Parents who witnessed or became aware of these events later remarked that, despite the mother's persistence in seeking fairness, her son was being "treated with utter disregard." This pattern of retaliatory mistreatment demonstrated the school's coordinated effort to punish the family for reporting abuse and to silence further advocacy. This incident caused severe humiliation, anxiety, and emotional trauma. The school again failed to investigate or apologize.

### 4. Athletic Retaliation and Humiliation by Langetieg

After Plaintiff reported dorm parent McDonald for publicly disrespecting J.S. (calling him to "shut up" before his older brother), Langetieg demoted J.S. from Varsity to Junior Varsity in

retaliation. J.S. led JV to a major win and received parental praise, yet the school ignored his contributions and continued to portray him negatively.

**5. Targeted Harassment and Criminalization of J.S.**

Dorm staff intentionally left items out, conducted unjustified room searches, and fabricated misconduct to entrap J.S. The coordinated conduct reflected racial profiling and an effort to criminalize a young Black student.

**6. Institutional Pattern and Racial Bias**

Cardigan's leadership normalized retaliation and concealment. No campus cameras, no transparent reporting, and coordinated falsehoods created a systemic culture of bias. Black and Brown students were more likely to be silenced and discredited.

**Administrative gaslighting:**

When Plaintiff raised these issues, leadership, including Mr. Joe Doherty and others, dismissed her as "irrational," furthering a hostile, retaliatory environment.

Upon information and belief, Head of School Christopher Day deliberately orchestrated a false narrative to conceal the assault committed by Kevin Collins.

Specifically, Day instructed Coach Christopher Kelleher to state that he was at the gym at the time of the incident assault, despite knowing this to be untrue. This deliberate falsification obstructed any meaningful investigation and demonstrated an organized effort by senior leadership to cover up and protect faculty while discrediting the victim and his family.

**7. Forced Withdrawals and Lasting Harm**

Plaintiff withdrew J.S. from Cardigan for safety. I.S., traumatized, later withdrew from Episcopal despite scholarship support. Both suffered emotional distress, humiliation, and long-term loss of opportunity.

## IV. HUMAN IMPACT STATEMENT

The harm to J.S. and I.S. is profound. J.S., the younger brother, was publicly degraded by Frost, who grabbed and shouted that he was "a disgrace to the school." The humiliation before peers and his brother damaged his confidence. I.S., forced to work while injured, fractured his foot and faced pressure to retract his truth. Both boys returned home withdrawn and traumatized. The family will endure years to come of emotional hardship due to the school's indifference and racial bias.

## V. CAUSES OF ACTION

### 1. Violation of Civil Rights (42 U.S.C. § 1981 — Race-Based Interference with Contract and Equal Protection)

*Against all Defendants individually and jointly.*

### 2. Civil Conspiracy (42 U.S.C. § 1985 — Interference with Civil Rights)

*Against Day, Kelleher, Collins, and others for conspiring to suppress the assault incident, intimidate witnesses, and retaliate against the family.*

### 3. Violation of 42 U.S.C. § 1983 (Joint Action / Color of Law)

*Against Cardigan Mountain School and individual Defendants to the extent they acted jointly with police or state-mandated reporting entities.*

### 4. Assault and Battery

*Against Collins (assault on I.S.) and Frost (assault on J.S.).*

### 5. Abuse of Power and Position of Trust

*Against Day, Langetieg, Doherty, and Frost for exploiting their authority to intimidate minors, retaliate against advocacy, and obstruct justice.*

### 6. Endangerment of a Minor / Reckless Conduct (NH RSA 631:3)

*Against Langetieg for exposing I.S. to a public setting with armed patrons and unsafe conditions; against Cardigan for permitting an unsafe environment.*

### 7. Negligence and Negligent Supervision

*Against Cardigan Mountain School and Day for failing to supervise and discipline staff who engaged in misconduct.*

**8. Intentional Infliction of Emotional Distress**

*Against all Defendants for extreme, outrageous, and racially motivated conduct causing severe psychological harm to both minors and their mother.*

**9. Defamation, False Light, and Retaliatory Conduct**

**Supporting Allegation for Count 9 (Defamation):**

Upon reliable information and belief, the defamatory statement labeling Plaintiff as "irrational" and "emotionally unstable" was made during a staff meeting among faculty members and administrators. Plaintiff was later informed of this characterization by a staff member, and the information was corroborated by her son, Isaiah, who independently confirmed that faculty members had spoken negatively and dismissively of Plaintiff in his presence. Plaintiff immediately objected in writing, as evidenced by contemporaneous correspondence titled *"Regarding Leadership Response and Mischaracterization,"* documenting the false nature of these remarks and their damaging impact on her credibility and parental advocacy.

*Against Doherty, Langetieg, and Daugry for malicious statements discrediting J.S., labeling Plaintiff "irrational," and undermining witness credibility.*

**10. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing**

*Against Cardigan Mountain School for failing to provide a safe, nondiscriminatory environment and violating the obligations implied in enrollment and scholarship agreements.*

**11. Failure to Report Child Abuse (NH RSA 169-C:29)**

*Against Collins, Day, and all mandated reporters who failed to report the February 7, 2025 assault and subsequent retaliatory conduct.*

**12. Violation of NH RSA 354-A (State Anti-Discrimination Statute)**

*Against all Defendants for race-based harassment, disparate treatment, and retaliation in education.*

**13. Malicious Intent and Civil Conspiracy (State Common Law)**

*Against all Defendants for coordinated acts to conceal misconduct, intimidate minors, retaliate against protected activity, and obstruct justice.*

## VI. PUBLIC INTEREST, SYSTEMIC RELIEF, AND DISCOVERY PRESERVATION

**1. Public Interest.**

**This action presents issues of broad public concern involving racial discrimination, retaliation, suppression of complaints, abuse of authority, and systemic neglect of student welfare within private educational institutions operating under state oversight. Although Cardigan Mountain School does not receive federal funding, Defendants' conduct falls within federal jurisdiction under 42 U.S.C. §§ 1981 and 1985, which protect civil rights regardless of federal funding and prohibit conspiracies to deprive equal protection and contractual rights.**

**2. Accreditation Oversight Notice (NEASAC Correspondence)**

On September 24, 2025, the New England Association of Schools and Colleges (NEASAC) formally acknowledged receipt of Plaintiff's complaint regarding Cardigan Mountain School's pattern of racial discrimination and retaliation. NEASAC confirmed that it maintains a

Whistleblower Policy for institutions violating accreditation standards but disclaimed authority to intervene in "personal complaints." This acknowledgment demonstrates that oversight bodies were alerted to systemic racial bias at Cardigan but that no remedial action or independent review followed, reinforcing the need for judicial intervention and policy-based relief through this Court.

(Exhibit K – NEASAC Acknowledgment Email)

**3. Systemic Relief.**

**Plaintiff seeks not only compensatory and punitive damages, but also systemic relief, including injunctive measures to ensure accountability, transparency, and equitable treatment of all students, particularly those from racial and minority backgrounds. Requested relief includes mandatory policy reform, staff retraining, establishment of independent oversight procedures, and monitoring by a court-appointed compliance officer or special master to ensure implementation.**

**4. Plaintiff respectfully requests that the Court, upon finding liability or sustained evidence of misconduct, refer this matter not only to the New England Association of Schools and Colleges (NEASAC) but also to the New Hampshire Department of Education, Bureau of Credentialing, and any other relevant state licensing authorities for review, suspension, or revocation of both institutional and individual professional licenses held by Defendants employed by Cardigan Mountain School.**

Such referral is warranted given the demonstrated pattern of racial discrimination, retaliation, and systemic neglect, which directly violates NEASAC's Standards for Accreditation and state-mandated educator ethics and reporting obligations.

Plaintiff further requests that the Court's final order certify these findings to the New Hampshire Department of Education, NEASAC, and any other accrediting or credentialing body with authority over Defendants' teaching or administrative licenses for immediate compliance review and disciplinary consideration.

**5. Discovery Preservation.**

Plaintiff formally requests preservation of all documents, electronic records, emails, text messages, and internal communications related to: (a) the assault and injury incidents involving I.S. and J.S.; (b) all faculty and staff referenced in this complaint; and (c) communications with law enforcement or state agencies. Defendants are hereby notified that any destruction or alteration of such evidence shall constitute spoliation and be grounds for sanctions.

**6. Public Accountability.**

Plaintiff reserves the right to notify advocacy organizations, civil-rights monitors, accrediting bodies, and the press regarding ongoing systemic failures in order to protect future students. This case serves both an individual and societal purpose — to ensure no other family endures similar harm or retaliation for exercising their civil rights.

**7. Joint & Several Liability.**

Consolidation. Plaintiffs request joint and several liability and consolidation of claims to ensure a single adjudication and prevent piecemeal litigation.


**Reservation of Rights Regarding Law Enforcement Defendants**

Plaintiff expressly reserves the right to bring additional claims or causes of action, whether civil or constitutional, against the Lebanon Police Department, the Enfield Police Department, or any other law enforcement agencies or officers in the State of New Hampshire who participated in, facilitated, or failed to properly investigate the reported assault, retaliation, or discriminatory conduct against the minor Plaintiffs.

This reservation includes, without limitation, any potential claims under 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, or other applicable state or federal provisions should future evidence or discovery reveal acts of neglect, bias, or misconduct by said agencies or their representatives.

Plaintiff further reserves all rights to seek joinder or amendment of the pleadings should additional facts support such inclusion within the consolidated proceedings already before this Court.

## VII. PRAYER FOR RELIEF

In light of the severity, duration, and public-interest nature of Defendants' conduct, Plaintiffs respectfully request the following comprehensive relief:

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against all Defendants, jointly and severally, granting the following relief:

**Damages sought include, but are not limited to:**

1. No less than **$25,000,000** in compensatory and punitive damages, including emotional distress, humiliation, reputational harm, educational deprivation, diminished earning capacity, and parental damages for Samantha Stone, plus any other amount proven at trial.

A.    Emotional distress, trauma, and humiliation caused by assaults, retaliation, and racial discrimination.

B.    Educational and scholarship losses, including withdrawal, lost advancement, and disrupted schooling.

C.    Reputational harm and defamation impacting future educational and professional opportunities.

D.    Diminished earning potential and loss of economic opportunity.

E.    Parental distress, loss of consortium, and associated family disruption.

F.    Costs of alternative schooling, travel, and corrective care.

G.    Structured trust administration to ensure long-term support and protection of minors.

H.    Non-taxable compensatory relief under 26 U.S.C. §104(a)(2).

I.    Additional punitive damages as the Court deems just and proper.

**2. Injunctive Relief.**

Implementation of enforceable policy reforms, mandatory staff training on racial equity and student protection, and the appointment of a **Court-Monitored Compliance Officer** or **Special Master** to ensure policy adherence and accountability.

**3. Record Expungement.**

Immediate expungement of any disciplinary or reputational records concerning J.S. and I.S. and written apologies acknowledging wrongdoing.

**4. Insurance and Disclosure.**

Within 30 days of service, Defendants must disclose all insurance policies, umbrella coverage, and excess liability carriers applicable to these claims.

Defendants and their insurers are precluded from altering, rescinding, or reducing any coverage or policy limits in effect during the pendency of this action, and any such action shall constitute bad-faith obstruction subject to sanctions and independent liability.

Defendants shall **certify under penalty of perjury** that all insurance and excess coverage disclosures are complete and accurate, including any coverage through **joint insurance funds, municipal risk pools, or excess liability consortiums**.

Plaintiffs further request that any judgment entered be deemed **collectible from all identified layers of insurance, risk pools, and indemnification agreements, jointly and severally.**

Plaintiffs also request that the **Court retain jurisdiction** to ensure timely compliance with these disclosures and payments obligations.

**5. Protective Provisions.**

Permanent injunction against any retaliation, blacklisting, or interference with Plaintiffs or their educational opportunities.

**6. Tax Efficiency and Trust Allocation.**

Plaintiffs respectfully request that any judgment or settlement entered in this action include a **detailed, itemized allocation** of all monetary relief — including, but not limited to, compensatory damages, punitive damages, special damages, pre- and post-judgment interest, attorneys' fees, and litigation costs. Plaintiffs further request that such allocation be **subject to Plaintiffs' written approval** to ensure that the characterization of each category is accurate and maximizes **non-taxable compensatory recovery.**

Pursuant to **26 U.S.C. § 104(a)(2)** and applicable federal case law governing the tax treatment of damages, Plaintiffs specifically request that the Court direct that any monetary award or settlement be subject to **CPA-supervised allocation and review**, with the goal of maximizing the non-taxable treatment of compensatory damages arising from physical injury, emotional distress, reputational harm, educational deprivation, and related losses.

Such allocation is necessary to ensure **tax efficiency**, protect the **long-term financial interests of the minor Plaintiffs**, and preserve the intended remedial effect of the judgment. Plaintiffs further request that any such recovery be **structured for deposit into the Kingdom Wealth Holdings Family Trust**, with **Samantha Stone designated as trustee and primary fiduciary,**

and that no third-party oversight or modification of trust administration be imposed **absent Plaintiffs' written consent.**


### 7. Public Accountability.

A formal written apology from Cardigan Mountain School and individual defendants, acknowledgment of harm, and publication of policy changes ensuring future student safety.

### 8. Interest, Costs, and Fees.

Pre- and post-judgment interest, costs of suit, and reasonable attorneys' fees (if counsel is later retained), payable by Defendants.

### 9. Non-Appeal Clause.

Should settlement be reached or judgment entered, Defendants waive any right to appeal as part of the resolution to ensure finality and avoid continued trauma to the minors.

In the event any Defendant initiates an appeal and does not prevail, Plaintiff shall be entitled to recover all reasonable attorney's fees, expert costs, court costs, and post-judgment interest associated with defending such appeal, to be paid jointly and severally by the appealing parties.

### 10. Settlement Posture & Jury Demand.

Plaintiffs demand a jury trial on all issues triable by a jury. Plaintiffs remain open to resolution only if they fully compensate for the harms, including binding injunctive relief with oversight, and adheres to the allocation/trust structures with interest and fee-shifting. Any negotiated resolution must include a written public apology and acknowledgment.

**WHEREFORE**, Plaintiffs respectfully request that the Court grant the above relief and any other relief deemed just and proper in the interest of justice and equity.

**Reservation of Rights.**

Plaintiffs proceed individually in this action but expressly reserve the right to seek class certification under Fed. R. Civ. P. 23 should discovery reveal that Defendants engaged in policies or practices that harmed other similarly situated Black students or families. This reservation places Defendants on notice that the systemic nature of the conduct described herein may warrant class-wide relief.

**Judicial Courtesy Statement:**

Plaintiffs express sincere respect for the Court's time and resources and appreciate its consideration of the procedural requests contained herein. The relief sought is intended solely to promote judicial efficiency, minimize duplicative filings, and ensure orderly communications among multiple parties. Plaintiffs remain fully cooperative with any direction or modification the Court deems appropriate in the interest of justice and administrative fairness.

## VII. VERIFICATION

I, **Samantha Stone**, being duly sworn under penalty of perjury pursuant to 28 U.S.C. § 1746, declare that I am the Plaintiff in the foregoing action. I have read the foregoing Complaint and know the contents thereof. The facts stated therein are true and correct to the best of my knowledge, information, and belief, and those allegations made on information and belief are believed to be true.

Executed on this 23 day of October, 2025, in Holmdel, New Jersey.

**CERTIFICATE OF SERVICE**

**Case:** *Samantha E. Stone v. Cardigan Mountain School, et al.*

**Court: U.S. District Court – District of New Hampshire**

| # Defendant | Title / Role | Service Address |
| --- | --- | --- |
| 1 Cardigan Mountain School | Institutional Defendant | 62 Alumni Drive, Canaan, NH 03741 |
| 2 Christopher Day | Headmaster | c/o Cardigan Mountain School, 62 Alumni Drive, Canaan, NH 03741 |
| 3 Ryan Frost | Athletic Director | c/o Cardigan Mountain School, 62 Alumni Drive, Canaan, NH 03741 |
| 4 Kevin Collins | Director of PEAKS Program / Teacher | c/o Cardigan Mountain School, 62 Alumni Drive, Canaan, NH 03741 |
| 5 Christopher Kelleher | Coach / Faculty | c/o Cardigan Mountain School, 62 Alumni Drive, Canaan, NH 03741 |
| 6 Kristofor Langetieg | Academic & Athletic Advisor | c/o Cardigan Mountain School, 62 Alumni Drive, Canaan, NH 03741 |
| 7 Joe Doherty | Dean of Discipline | c/o Cardigan Mountain School, 62 Alumni Drive, Canaan, NH 03741 |

Respectfully submitted,



Samantha Stone, Pro Se

253 Main St, Ste 144

Matawan NJ 07747

(718) 916-5974

samanthastone5910@gmail.com

Date: October 23, 2025

## VIII. EXHIBITS INDEX

A. Feb 7 Assault by Collins

B. I.S. Injury & Orthopedic Records

C. Frost Assault on J.S.

D. Withdrawal Letters (J.S. and I.S.)

E. Neglect and Mildew Evidence

F. Leadership Mischaracterization ("Irrational" email)

G. Blair Opportunity Interference

H. Dorm Setup & Search Notes

I. Langetieg Racial Remark & Bar Incident

J. Retaliation & Police Disregard

K. NEASAC email